IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Sayak Ghosh,

      Plaintiff,

v.

Capital One Services, LLC,

      Defendant.

Case No. 21 C 4111

Judge Jorge L. Alonso

## Memorandum Opinion and Order

Defendant Capital One Services, LLC has moved for summary judgment on all of Plaintiff Sayak Ghosh's claims, which allege discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12213. For the reasons below, the Court grants Capital One's motion (ECF No. 29) and dismisses Ghosh's claims.

### Background[1]

Capital One hired Ghosh in August 2018 as a senior business analyst. At the start, Ghosh reported to Deep Sen Gupta, who in turn reported to Satish Balakrishnan.

According to Ghosh, throughout Ghosh's time at Capital One, other employees said on multiple occasions that Capital One had a "rich white kid culture." Ghosh also reports that he was reprimanded for speaking his native Hindi, and that employees of American national origin were treated more favorably than were employees of non-American national origin because their work was more often showcased and they had more one-on-one meetings with Balakrishnan.

---

[1] This background is taken from the statements and responses the parties have submitted under this District's Local Rule 56.1. Unless otherwise noted, these facts are either undisputed or presented from Ghosh's point of view as the non-moving party.

Further, Ghosh notes that one employee not of American national origin was terminated, and another was put on an allegedly unwarranted coaching plan. Beginning April 2019, Abby Gravenhorst replaced Deep Sen Gupta as Ghosh's direct supervisor. During her time as Ghosh's supervisor, Gravenhorst made such comments as:

- Telling Ghosh he would not understand activities during a team-building exercise because they were "American things";
- Telling Ghosh he was "not a fit culturally" and that he "should just go back to his country";
- Asking Ghosh, "Why don't you just go home?"; and
- Commenting about her ties to the Republican party during conversations regarding immigration.

Capital One placed Ghosh on a coaching plan in July 2019. Capital One implemented sixty-day coaching plans if a supervisor determined an employee was struggling with job duties. If the coaching plan was unsuccessful, the employee would be placed on a Performance Improvement Plan ("PIP") for sixty days. If the employee failed the PIP, the employee would be terminated.

On September 12, 2019, Gravenhorst met with Ghosh and informed him that he would be receiving a PIP by September 20, 2019. On September 16, 2019, Ghosh contacted Capital One's associate relations department to discuss his options regarding the PIP and complained about his circumstances at Capital One, including that he was not getting feedback or training and that Balakrishnan had said something in November 2018 about "rich white kids." The associate relations department opened an investigation and spoke with Gravenhorst, Balakrishnan, and several of Ghosh's colleagues, none of whom corroborated Ghosh's claims of a lack of training

or feedback or any other issues, and the department determined that Ghosh was not treated unfairly or inconsistently with any Capital One policy.

On September 21, 2019, Ghosh applied for a job at LendingClub. Around this time, Gravenhorst scheduled a meeting with Ghosh for September 30, 2019 to deliver the PIP. Ghosh responded that he would be out of office that day and the next due to his visa eligibility and a doctor's appointment. Capital One decided to wait to deliver Ghosh's PIP until he returned to the office.

On October 1, 2019, before receiving his PIP, Ghosh applied for leave under the Family and Medical Leave Act. Capital One approved Ghosh for leave from October 1, 2019 through November 18, 2019, and Ghosh's leave ultimately was extended into 2020. Ghosh was diagnosed with and treated for anxiety and depression. During his leave, Ghosh received emails from Gravenhorst to check in and offer assistance.

Also during his leave, Ghosh traveled to California to interview with LendingClub and to search for apartments. On December 18, 2019, Ghosh received a job offer from LendingClub with a planned start date of February 10, 2020. However, the transfer process for his work visa was still in progress as of January 21, 2020, and Ghosh told LendingClub that his attorneys anticipated that the visa would be processed in the middle of February 2020.

Ghosh returned to work at Capital One on February 10, 2020. That day, Gravenhorst and Ghosh held a meeting during which Gravenhorst asked Ghosh about his medical condition and Ghosh also commented that he was "going to take action."[2] Following the meeting, Gravenhorst emailed colleagues in Capital One's human resources department to summarize her meeting with

---

[2] Capital One claims that Ghosh instead said, "This isn't going to end well for anyone."

3

Ghosh, including Ghosh's comments. As a result, the associate relations department opened an investigation.

Following their meeting on February 10, 2020, Ghosh began working remotely. On February 11, 2020, Gravenhorst put Ghosh on a PIP and requested that a manager coach Ghosh through the PIP.

On February 12, 2020, Ghosh submitted a complaint, alleging that Balakrishnan and Gravenhorst had harassed him because they wanted Ghosh to leave Capital One. Ghosh also alleged that Gravenhorst told him to "go back to your own country," boasted about her family's ties to the Republican Party, and asked him about his health after his medical leave. Ghosh's complaint led Capital One's associate relationship department to open an investigation led by Allison Smith, who spoke to Ghosh regarding his complaint on February 14, 2020. During their meeting, Ghosh told Smith that he did not want to continue working at Capital One, and Smith advised that he needed to make the best decision for himself but that she would continue to investigate his claims either way. Ghosh responded that he wanted higher compensation or else would seek legal counsel. Around this time, Ghosh also discussed severance options with Capital One's human resources department, primarily focusing on whether he would continue receiving severance benefits if he secured new employment.

On February 19, 2020, Ghosh opted into his PIP. Later that month, and while still employed at Capital One, Ghosh moved from Chicago to California for his upcoming job at LendingClub, which was to begin on March 9, 2020. On March 6, 2020, Ghosh resigned from Capital One. As of that date, Balakrishnan had no plans to recommend Ghosh's separation from employment at Capital One.

Both the investigation related to Ghosh's complaint and the investigation based on Gravenhorst's February 10, 2020 email concluded following Ghosh's resignation from Capital One, and neither resulted in any disciplinary action or outcome for Ghosh or Gravenhorst.

On August 3, 2021, Ghosh sued Capital One in this Court, alleging: (1) discrimination based on national origin under Title VII (Count I); (2) retaliation under Title VII (Count II); (3) discrimination based on disability under the ADA (Count III); and (4) retaliation under the ADA (Count IV). Following discovery, Capital One filed a motion for summary judgment as to all counts. (ECF No. 29.) The motion has been fully briefed.[3]

## Legal Standard

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wackett v. City of Beaver Dam*, 642 F.3d 578, 581 (7th Cir. 2011). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Summary judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020) (internal quotation marks and

---

[3] The Court notes Ghosh's failure to follow the Court's Local Rule 56.1. For example, his statement of additional material facts includes fifty numbered paragraphs, above the forty-paragraph limit and without seeking leave of court. N.D. Ill. Local R. 56.1(d)(5) ("An opposing party's LR 56.1(b)(3) statement of additional facts must not exceed 40 numbered paragraphs. A party must seek the court's permission before exceeding these limits."). Certain of Ghosh's purported additional material facts also are entirely duplicative of facts in Capital One's statement of material facts that Ghosh did not dispute. (*Compare* ECF No. 35 ¶ 7 (Capital One's undisputed material fact regarding Ghosh's initial supervisors) *with* ECF No. 34 ¶ 2 (Ghosh's same verbatim material fact). Though these failures may justify striking portions of filings, the Court has considered Ghosh's filings in their entirety.

citation omitted). "To defeat a motion for summary judgment, the party opposing it must make a 'showing sufficient to establish the existence of [any challenged] element essential to the party's case, and on which that party will bear the burden of proof at trial.'" *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 893–94 (7th Cir. 2018) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). The court may not weigh conflicting evidence or make credibility determinations, but the party opposing summary judgment must point to competent evidence that would be admissible at trial to demonstrate a genuine dispute of material fact. *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 705 (7th Cir. 2011); *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." *Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013).

In assessing the evidence at summary judgment, the court must consider the facts in the light most favorable to the non-moving party, giving that party "the benefit of all conflicts in the evidence and reasonable inferences that may be drawn from the evidence," regardless of whether it can "vouch for the objective accuracy of all" the evidence the non-moving party puts forward. *Fish v. GreatBanc Tr. Co.*, 749 F.3d 671, 674 (7th Cir. 2014). Even though district courts must view the non-moving party's evidence in this generous light, it does not follow that they are "required to draw every requested inference; they must only draw reasonable ones that are supported by the record." *Omnicare*, 629 F.3d at 704. "Inferences supported only by speculation or conjecture will not suffice." *Johnson*, 892 F.3d at 894.

## Discussion

The Court addresses Ghosh's discrimination and retaliation claims in turn below.

6

I.   **Discrimination Claims (Counts I and III)**

Under Title VII and the ADA, a *prima facie* case of discrimination requires the plaintiff to show that (1) the plaintiff falls into one or more statutorily protected categories (here, based on Ghosh's national origin or disability); (2) the plaintiff was meeting his employer's legitimate business expectations; (3) the plaintiff suffered a cognizable adverse employment action; and (4) one or more similarly situated individuals outside plaintiff's protected class received better treatment. *See Gross v. Peoples Gas Light & Coke Co.*, Case No. 17-cv-3214, 2022 WL 4599369, at *11 (N.D. Ill. Sept. 30, 2022) (citation omitted). Here, the Court focuses on whether there was an adverse employment action and, finding none, does not reach the other elements.

An adverse employment action "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Crady v. Liberty Nat. Bank and Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993). A "mere inconvenience or an alteration of job responsibilities" is not enough. *Id.*

Ghosh argues that the adverse employment action he suffered consisted of Gravenhorst's "retaliatory complaint"—her February 10, 2020 email to others at Capital One that summarized her conversation with Ghosh and resulted in an investigation—and his placement on a coaching plan and PIP. Capital One counters that these do not constitute an adverse employment action.

The Court agrees with Capital One that the circumstances Ghosh points to do not qualify as an adverse employment action under Title VII or the ADA. Performance-related evaluations or remediation like a coaching plan or PIP do not typically constitute adverse employment actions, and the Court sees no material evidence that Ghosh's placement on a coaching plan or PIP was an exception. *Smart v. Ball State Univ.*, 89 F.3d 437, 442 (7th Cir. 1996) ("There is little support

7

for the argument that negative performance evaluations alone can constitute an adverse employment action."); *Johnson v. Johnson & Johnson*, 67 F. Supp. 3d 1001, 1010 (N.D. Ill. 2014) ("Neither the attendance warning, Lueck's unfavorable performance evaluation, the [Below Standards Performance Memorandum], nor the PIP constitutes an adverse employment action.") (citation omitted).

Ghosh cites a case from a different district for the principle that "[a] warning can constitute an adverse employment action when it is accompanied or followed by tangible job consequences," and again points to his placement on the PIP and Gravenhorst's "retaliatory complaint" against him as qualifying "tangible consequences." *Lamb v. Vision Care Holdings, LLC*, 642 F. Supp. 2d 858, 870 (S.D. Ind. 2007) (finding adverse employment action of termination). But unlike the termination in *Lamb*, these circumstances do not amount to tangible consequences that give rise to an adverse employment action. At most, they are akin to "unfavorable performance evaluations" and "reprimands," which do not suffice. *See Oest v. Ill. Dept. of Corr.*, 240 F.3d 605, 613 (7th Cir. 2001), *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). Ghosh has not offered any evidence of tangible job consequences that might genuinely show an adverse employment action. *See Silk v. City of Chicago*, 194 F.3d 788, 802–03 (7th Cir. 1999) ("Sergeant Silk's lowered performance evaluations claim fails because he provided no evidence that any injury or adverse employment action resulted from the allegedly lower ratings."); *Rabinovitz v. Pena*, 89 F.3d 482, 488–89 (7th Cir. 1996) (affirming summary judgment against a plaintiff and finding no adverse employment action where a "lower performance rating did not alter his responsibilities or salary," "[n]one of the restrictions related to plaintiff's job responsibilities or job title, and all appear rationally related to the explanation given for their imposition").

Ultimately, a reasonable juror could not conclude that the circumstances about which Ghosh complains were "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Crady v. Liberty Nat. Bank and Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993). Ghosh thus has not provided a genuine dispute as to the absence of an adverse employment action to support a *prima facie* case of discrimination, and summary judgment in Capital One's favor is appropriate.

### A. Hostile Work Environment

To the extent Ghosh's Counts I and III also allege a hostile work environment, those claims still fail. To establish a hostile work environment under Title VII or the ADA, Ghosh must show: "(1) unwelcome harassment; (2) based on a protected characteristic; (3) that was so severe or pervasive as to alter the condition of employment and create a hostile or abusive working environment; and (4) a basis for employer liability." *Demkovich v. St. Andrew the Apostle Parish, Calumet City*, 3 F.4th 968, 977 (7th Cir. 2021). "A hostile work environment is based on the totality of the circumstances," considering "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (citation omitted). A plaintiff must show that "'the work environment was so pervaded by discrimination that the terms and conditions of employment were altered.'" *Id.* (citation omitted).

Ghosh argues that various comments and other circumstances support his claim of a hostile work environment. He specifically points to:

- Balakrishnan's statements that Capital One was a "rich white kids' workspace" and the like;
- Balakrishnan reprimanding Ghosh and others for speaking in Hindi rather than English;

9

- Balakrishnan showcasing the work of employees of American national origin;

- Balakrishnan regularly cancelling one-on-one meetings with Ghosh but attending one-on-one meetings with employees of American national origin;

- An employee not of American national origin being let go;

- Another employee not of American national origin being placed on a coaching plan despite prior good performance in a prior branch;

- Gravenhorst's comments about whether Ghosh was a cultural fit, including suggesting that Ghosh should go back to his country; and

- Gravenhorst's comments regarding her ties to the Republican party when discussing immigration.

Capital One counters that these incidents do not rise to the level of a hostile work environment, particularly when mitigated by certain undisputed facts, including:

- Balakrishnan himself was Indian, and made the same comments regarding Capital One's "rich white kid culture" to Ghosh's German colleague;

- Balakrishnan nitpicked people's language generally, not only the use of Hindi;

- Balakrishnan and Gravenhorst promoted and praised other Indian employees;

- Gravenhorst's alleged comment suggesting that Ghosh go back to India was in the context of discussing Ghosh's unhappiness at Capital One and in Chicago, and his father's request that Ghosh return home; and

- During Ghosh's leave while at Capital One, Gravenhorst emailed him to offer support and assistance.

Though Ghosh points to incidents and comments that could be considered inappropriate or offensive, his circumstances were not severe or pervasive enough to constitute a hostile work environment. *See Swyear v. Fare Foods Corp.*, 911 F.3d 874, 881 (7th Cir. 2018) ("[E]mployers

10

generally do not face liability for off-color comments, isolated incidents, teasing, and other unpleasantries that are, unfortunately, not uncommon in the workplace."); *Patt v. Fam. Health Sys., Inc.*, 280 F.3d 749, 754 (7th Cir. 2002) (isolated and sporadic sex-based comments, although certainly offensive, did not constitute severe or pervasive harassment); *Stadelmann v. Siemens Indus., Inc.*, 2022 WL 4182391, at *8 (N.D. Ill. Sept. 12, 2022) (finding that "five to ten comments over a seven-month period," among other things, "that expressed general negative opinions about women in the workplace" did not overcome summary judgment); *Adam v. Obama for Am.*, 210 F. Supp. 3d 979, 991 (N.D. Ill. 2016) ("Generally, rude or impolite interactions with co-workers are insufficient to support a claim for hostile work environment.").

Ghosh evidently was unhappy at Capital One, perhaps in part due to certain interactions with Balakrishnan and Gravenhorst, but has not presented material evidence that his workplace was sufficiently hostile under Title VII or the ADA. *See Patton v. Indianapolis Pub. Sch. Bd.*, 276 F.3d 334, 339 (7th Cir. 2002) ("Many employees have to put up with some amount of rude, arrogant, or boorish behavior at work; the alleged actions of Coleman and Gilbert fall far short of creating an actionable hostile work environment."); *Russell v. Bd. Of Trustees of Univ. of Ill. at Chicago*, 243 F.3d 336, 343 (7th Cir. 2001) ("[T]he discrimination laws do not mandate admirable behavior from employers, through their supervisors or other employees."). The record lacks evidence that Ghosh's workplace conditions went much beyond occasional comments (some of which were not directed at him personally or had mitigating context) and were egregious enough to avoid summary judgment. *See Ford v. Minteq Shapes and Servs., Inc.*, 587 F.3d 845, 848 (7th Cir. 2009) ("Although we find these comments rude and offensive, Title VII is 'not . . . a general civility code' and will not find liability based on the 'sporadic use of abusive language.'") (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)); *Ngeunjuntr v.*

11

*Metro. Life Ins. Co.*, 146 F.3d 464, 467 (7th Cir. 1998) (affirming summary judgment where alleged comments, including that the plaintiff should "go back East," were "offensive but they were also isolated and, in some circumstances, not directed at Ngeunjuntr"); *Melgoza v. Rush Univ. Med. Center*, 499 F. Supp. 3d 552, 574 (N.D. Ill. 2020) (granting summary judgment of no hostile work environment related to national origin, including where "Dr. DeCresce began Melgoza's interview by putting on a Donald Trump mask").

The lone case Ghosh cites in support, *Hawkins v. Groot Indus., Inc.*, is not controlling or comparable. In *Hawkins*, the plaintiff's coworkers, among other things, called plaintiff and others "[n-word], monkey, porch monkey, f–ing monkey, chango (a Spanish word for monkey), Kobe Bryant, [] Buckwheat," and "boy," and these racial epithets happened on a "*daily* basis." *Hawkins v. Groot Indus., Inc.*, No. 01 C 1731, 2003 WL 1720069, at *2 (N.D. Ill. Mar. 31, 2003) (emphasis in original). The circumstances Ghosh recounts come nowhere near the racial slurs and other conduct in *Hawkins*, and do not survive summary judgment.

Therefore, Ghosh fails to present a genuine dispute as to the absence of a hostile work environment under Title VII or the ADA, and the Court dismisses Counts I and III.

## II.   Retaliation Claims (Counts II and IV)

To bring a retaliation claim under Title VII or the ADA, a plaintiff must show "(1) statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Gross*, 2022 WL 4599369, at *20 (citation omitted). "The standard for a materially adverse employment action is lower in the retaliation context than in the discrimination context." *Jones v. City of Chicago*, No. 21 C 137, 2023 WL 3479172, at *11 (N.D. Ill. May 16, 2023) (citation omitted). "In the retaliation context, an employment action is materially adverse if it might have dissuaded a reasonable worker from making or supporting a

charge of discrimination." *Id.* (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006)). This is assessed "from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id.*

For similar reasons to those explained above in the discrimination context, Ghosh has not presented material evidence of an adverse employment action in the retaliation context. He did not suffer an adverse employment action merely by being placed on a coaching plan or PIP or due to Gravenhorst's email that resulted in an investigation—which did not result in any consequences against Ghosh before or after he resigned. *See id.* (finding that initiation of a complaint that "was administratively closed" and "did not result in any tangible job consequence" was not a materially adverse action in the retaliation context). Even under the lower threshold for an adverse employment action in the retaliation context, Ghosh's circumstances do not pass muster.

Ghosh briefly argues that these actions—the coaching plan, PIP, and Gravenhorst's email—support a claim of constructive discharge as Ghosh's adverse employment action. Constructive discharge requires "working conditions so intolerable that a reasonable person would have felt compelled to resign." *Penn. State Police v. Suders*, 542 U.S. 129, 149 (2004).

Ghosh cites no supporting caselaw, and the Court finds no material evidence of constructive discharge here. Just as Ghosh's circumstances did not constitute an adverse employment action or hostile work environment, they were not so intolerable that they would have forced a reasonable person to leave Capital One. Ghosh resigned mere days after submitting a complaint that was still being investigated, for which he had been interviewed and reassured that Capital One would continue investigating, and on the Friday before he started a new job in California that he had accepted months earlier.

13

Oddly, Ghosh appears to argue that he was constructively discharged because the complaint he filed on February 12, 2020 did not result in any consequences after he resigned. This makes little sense. A jury could not reasonably conclude here that Ghosh's complaint was futile and his conditions were intolerable on March 6, 2020, when Capital One had barely begun investigating his complaint, Ghosh had already moved to California for his next job to begin the following Monday, and Balakrishnan did not intend to recommend that Capital One fire Ghosh at that time. Ultimately, Ghosh's circumstances fall far below the threshold of a constructive discharge. *See Lifton v. Bd. Of Educ. Of City of Chicago*, 416 F.3d 571, 578 (7th Cir. 2005) ("The doctrine of constructive discharge is limited to egregious cases, such as, for example, where an employee is subjected to threats or repeated racist taunting.") (citation omitted). Accordingly, a reasonable jury could not find that Ghosh was constructively discharged or otherwise suffered an adverse employment action to support his retaliation claims.

Ghosh therefore cannot make a *prima facie* case of retaliation under Title VII or the ADA, and the Court dismisses Counts II and IV.

## Conclusion

Accordingly, the Court grants Capital One's motion for summary judgment (ECF No. 29) in its entirety and dismisses Ghosh's claims. Case terminated.

**SO ORDERED.**                                                         **ENTERED: August 2, 2023**

_____
**HON. JORGE ALONSO**
**United States District Judge**